GREGG ELLIOTT, et al.,       )
                                    )
        Plaintiffs,       )
                                    )
       vs.               )   Case No. 4:05CV1297 CDP
                                    )
BRIDGESTONE/FIRESTONE   )
NORTH AMERICAN TIRE,     )
LLC, et al.,                )
                                    )
        Defendants.     )

## MEMORANDUM AND ORDER

This case arises from a rollover car accident in which plaintiff Deborah Elliott

was the driver of a Ford Explorer, and her son, plaintiff Jeffery Elliott, was a

passenger.  Both Deborah and Jeffery were injured in the accident.  Deborah's

husband, Gregg Elliott, is also a plaintiff, bringing his own loss of consortium claim.


Defendants are the manufacturer of the car, the manufacturer of the car's

tires, the dealership that sold plaintiff the car, and a business where Gregg Elliott

sought replacement tires before the accident.  The Elliotts originally filed this suit in

St. Louis City Circuit Court, State of Missouri.  Defendant Bridgestone/Firestone

North American Tire removed the action to this Court, with the consent of the other

defendants, alleging that defendants Dave Sinclair Ford and 230971 Latham Tire

Company were fraudulently joined to defeat diversity jurisdiction. Ford Motor Company and Dave Sinclair Ford have filed a motion to dismiss and/or motion to enforce settlement, alleging that plaintiffs previously settled their claims against them. Latham Tire, a/k/a Autotire, has also filed for dismissal for failure to state a claim. The Elliotts seek remand of the case and reasonable attorneys' fees for the time spent responding to the removal action by defendants.

After fully considering the parties' extensive briefs and evidence, I find that Dave Sinclair Ford and Latham Tire were fraudulently joined in this action, and so I will grant their motions to dismiss. Plaintiffs' claims against Ford Motor Company and Dave Sinclair Ford were settled in an earlier lawsuit. Plaintiffs' claims against Latham lack any arguable basis in law or fact. As all the non-diverse defendants will be dismissed from the action, this Court has diversity jurisdiction. I will therefore deny the Elliotts' motion to remand, and will set this case for a scheduling conference.

## I.     Background

In their state-court petition the Elliotts alleged that one or more of the tires on their Ford Explorer failed, causing a rollover accident on July 20, 2001. Bridgestone/Firestone removed this case to federal court, alleging that Dave Sinclair Ford and Latham Tire, the two non-diverse defendants, were fraudulently joined in

order to defeat diversity jurisdiction. The Elliotts, Dave Sinclair Ford, and Latham Tire are all Missouri citizens. Bridgestone/Firestone and Ford Motor Company are not Missouri citizens.

### A.    The Earlier Lawsuit

In January 2004 Deborah Elliott filed a suit against Bridgestone/Firestone, Ford Motor Company, and Dave Sinclair Ford. That earlier suit was filed in the Circuit Court of St. Louis County, and arose from the same rollover accident that is the subject of this suit. Court records show that in May of 2005 the earlier case was voluntarily dismissed without prejudice by counsel for Deborah Elliott.

Bridgestone/Firestone alleges that Dave Sinclair Ford and Ford Motor Company were released from liability to all three of the Elliotts with regard to the accident. It argues that Deborah Elliott's voluntary dismissal of the earlier St. Louis County suit was a result of a settlement agreement and release. Because the parties dispute whether a settlement has occurred, I allowed limited discovery into the issue. Robert Langdon, counsel for Deborah Elliott in the earlier St. Louis County suit testified at a deposition that he settled all claims regarding the July 2001 accident on behalf of all three Elliotts against Ford Motor Company and Dave Sinclair Ford:

Q.    You represented - - at least at one time you represented Gregg,

Deborah and Jeffrey Elliott in connection with that automobile accident?

A.    Yes.

Q.    And you did in fact make a settlement with Ford Motor Company and Dave Sinclair Ford for an amount, I think that was mentioned, an amount - - it doesn't matter how much - - to settle all claims of Deborah, Gregory and Jeffrey Elliott against Ford Motor Company and Dave Sinclair Ford?

A.    We did.

        . . .

Q.    (By Mr. Williams) And your clients were advised of the offer that was made by Ford to resolve all claims that may exist on behalf of the family against Ford and Dave Sinclair Ford; is that correct?

A.    Yes.

Q.    Did you leave the decision up to Gregg, Deborah and Jeffrey Elliott as to whether to accept or reject the offer from Ford and Dave Sinclair Ford?

A.    Yes.

Q.    And did you ultimately hear a response from Gregg, Deborah and Jeffrey Elliott as to what their decision was regarding the offer before Dave Sinclair Ford settled all claims arising from that accident?

A.    Yes.

        . . .

Q.    (By Mr. Williams) Mr. Langdon, was there a discussion with your clients, the Elliotts, Deborah, Jeffrey and Gregory Elliott, as to the

effect of accepting the offer and what effect that would have on their rights to in the future pursue claims from the accident against Ford and Dave Sinclair Ford?

A.      Yes.

Q.      And you understood certainly in your years of experience that it's important  for your clients to understand the effect of their decisions on litigation?

A.      Yes.

Q.      That's something that's a part of your custom and practice and you certainly do to the benefit of your clients?

A.      I do.

Q.      Armed with that understanding, did you convey to Ford or Ford's representatives at Shook, Hardy & Bacon that Gregg, Deborah and Jeffrey Elliott wanted to accept the offered money and release their claims against Ford and Dave Sinclair Ford?

A.      Yes.

Q.      And that information was conveyed with authority to do so from your clients; is that correct?

A.      Yes.

Robert Langdon Dep. at 11-12, 20 & 22-23.

Langdon testified that he asked Ford not to send the settlement documents and check to him until further notice, so he could continue negotiating a reduction in plaintiffs' medical liens.  No settlement documents were ever signed, and the money

was never paid.

The Elliotts all filed affidavits disagreeing with Langdon's testimony, stating that only Deborah's claim was the subject of any settlement discussions, and denying that even her claim was settled. Although I ordered production of documents related to the settlement, the Elliotts did not produce all documents ordered. Gregg Elliott's affidavit states that he made notes about the settlement, but then attaches a five page document that is almost completely redacted, with only two short paragraphs of text revealed. Plaintiffs have not explained the redactions.

## B.    Claims Against Latham Tire

Bridgestone/Firestone argues that Latham Tire was fraudulently joined to defeat diversity jurisdiction, in that there is no factual basis to support the allegations made by the Elliotts against Latham. The petition contains five counts directed against Latham Tire: breach of contract, negligence, negligent misrepresentation, fraud, and loss of consortium. In general, the Elliotts allege that Latham entered into an agreement with Gregg Elliott to provide and install new tires on his Ford Explorer and that Latham failed to follow through with its promise, that Latham failed to maintain an adequate supply of replacement tires, that Latham failed to obtain and communicate information on the tire replacement program to the Elliotts who relied on its superior knowledge, and that Latham concealed and failed

to disclose that suitable tires were not available and would not be provided. As part of discovery process in the previously-filed St. Louis County suit, Gregg Elliott was deposed. He answered questions concerning the Elliotts' interaction with Latham Tire, a/k/a Autotire:

> Q:     And in response to that letter [from Ford regarding the tire replacement program] what did you do?

> A:     Okay, I basically went over to Auto Tire in Sunset Hills, Missouri and talked to them about - - I received a letter from Ford, Firestone and they said that there was a waiting list. They put me on the waiting list and they would call me and I said - - I said, "Can I see your waiting list?" and they showed me their waiting list and sure enough it was probably two or three pages long and they told me it would be a little while but they would get me in as soon as they can, and I said, "Fine, I will wait to hear back from you."

> Q:     Again you said you got this [letter] from Firestone, I mean, do you remember anything in addition to what's been marked as Exhibit A which looks like a Ford Motor Company notice to me, but - -

> A:     No, I can't recall.

> Q:     And did they give you any advice at Auto Tire with respect to the use of the tires that were on the Ford Explorer, you know, what you're signing up on the waiting list for?

> A:     No, they didn't share any information with me. I did ask them what kind of tire they were going to put on there and they did share that with my [sic].

> Q:     A Michelin?

> A:     It was Michelin, LTX model.

Q:     You weren't requesting a specific replacement, they told you what they could probably get?

A:     Right, right, that's exactly what they told me.

       . . .

Q:     I believe you said after you received a recall letter from Ford you took the vehicle to Auto Tire?

A:     Yes.

Q:     Did you try to take the vehicle to a Ford dealership?

A:     At that point there was a tremendous amount of waiting time at a Ford dealership and it was pretty public knowledge back then, so I didn't even bother going by the Ford dealership, I just took it to Auto Tire because I was talking to - - and I can't recall who I was talking to, I was talking to a friend or someone.  They told me Auto Tire was getting people in and out pretty quick and that's why I decided to go to Auto Tire.

Q:     After you received a recall letter did you call one of the Ford dealerships to see if they had tires in stock?

A:     Yes.

Q:     Which one did you call?

A:     I called Sunset Ford.

Q:     What were you told by Sunset?

A:     That they would have to put us on a waiting list and that there was no tires available at that time.

Gregg Elliott Dep. at 19-20 & 70-71.

## II.    Legal Standard

A defendant may remove an action from state court to federal district court if the action is within the district court's original jurisdiction, unless an act of Congress expressly provides otherwise.  28 U.S.C. § 1441(a).  Under 28 U.S.C. § 1332(a), federal district courts have original jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and there is complete diversity between all proper plaintiffs and all proper defendants.  See Iowa Public Service Co. v. Medicine Bow Coal Co., 556 F.2d 400, 403-04 (8th Cir. 1977) (citations omitted).  The issue before the Court is whether complete diversity exists.  Bridgestone/Firestone, as the party seeking removal and opposing remand, has the burden of establishing federal subject-matter jurisdiction.  In re Business Men's Assur. Co. of America, 992 F.2d 181, 183 (8th Cir. 1993) (citing Bor-Son Bldg. Corp. v. Heller, 572 F.2d 174, 181 n. 13 (8th Cir. 1978)).

On the face of the Elliotts' state-court petition, there is not complete diversity among the parties.  The Elliotts are residents of Missouri, and Dave Sinclair Ford and Latham Tire both have their principal place of business in Missouri.  To defeat remand, Bridgestone/Firestone must prove that the Elliotts fraudulently joined defendants Dave Sinclair Ford and Latham Tire solely to deprive this Court of diversity jurisdiction.  "Joinder is fraudulent and removal is proper when there exists

no reasonable basis in fact and law supporting a claim against the resident defendants." Wiles v. Capitol Indem. Corp., 280 F.3d 868, 871 (8th Cir. 2002) (citation omitted). Under the doctrine of "fraudulent joinder," a court may disregard the citizenship of a nondiverse defendant who was frivolously joined in an effort to defeat removal. Commercial Sav. Bank v. Commercial Fed. Bank, 939 F.Supp. 674, 680 (N.D. Iowa 1996).

In ruling on these motions, I will consider the previously-quoted deposition testimony of both Robert Langdon and Gregg Elliott, and the affidavits submitted by Gregg, Deborah and Jeffery Elliott. See Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 263 (5th Cir.1995) (explaining that "fraudulent joinder claims can be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony"); Parnas v. General Motors Corp., 879 F.Supp. 91 (E.D. Mo. 1995) (considering the parties' affidavits and a settlement agreement in addition to the parties' pleadings in determining the issue of fraudulent joinder); Reeb v. Wal-Mart Stores Inc., 902 F.Supp. 185 (E.D. Mo. 1995) (finding the "most prudent method" of determining if a defendant was fraudulently joined is to consider materials outside the pleadings to see if they establish facts supporting the plaintiff's claims).

## III.     Discussion

### A.     Fraudulent Joinder of Dave Sinclair Ford

Bridgestone/Firestone asserts that the citizenship of Dave Sinclair Ford should not be considered since both Ford Motor Company and Dave Sinclair Ford have previously settled all claims arising from the July 2001 accident with the Elliotts.  Ford and Dave Sinclair Ford seek dismissal for the same reason.  Robert Langdon, Deborah Elliott's previous counsel, testified that he had express authority to enter into such a settlement on behalf of all three of the Elliotts, and that the case was, in fact, settled.  On the other hand, the Elliotts state that Langdon did not have the authority to settle their claims, especially the claims of Gregg and Jeffery Elliott who were not named plaintiffs in the prior suit in St. Louis County.

In a recent Eighth Circuit opinion, <u>Harris v. Arkansas State Highway and Transportation Department</u>, the court of appeals addressed a similar factual scenario with the same legal question.  No. 05-2005, 2006 WL 305513 (8th Cir. Feb. 10, 2006).  Like our case, the plaintiff and her previous attorney had conflicting recollections of their conversations regarding the authorization of a settlement agreement.  The attorney testified that he described the terms of a potential settlement agreement to plaintiff and that she then authorized him to enter into that agreement.  After the attorney informed the court of the agreement, the pending

litigation was dismissed. Plaintiff never signed a written settlement agreement.

The Eighth Circuit affirmed the district court's decision to deny the plaintiff's motion. Deferring to the district court's credibility determinations, the court of appeals found that plaintiff's previous attorney, Blackman, had authority to enter into the agreement on plaintiff Harris's behalf, and that Harris's arguments that she misunderstood the agreement terms were insignificant to the authority determination:

> We have stated that a settlement agreement is enforceable if the attorney possessed "actual, implied, or apparent" authority to enter into it, *Surety Ins. Co. v. Williams*, 729 F.2d 581, 583 (8th Cir. 1984), and more recently that an attorney must have been given "express" authority to enter into it, *Turner v. Burlington N. R.R. Co.*, 771 F.2d 341, 345 (8th Cir. 1985). Under either standard, the record demonstrates that Blackman had authority to enter into the settlement agreement. Because express authority is the more stringent standard, *Greater Kansas City Laborers Pension Fund*, 829 F.2d at 646 & n.2, we conduct our analysis under that standard.

> Express authority "can be created by written or spoken words or the conduct of the principal which, reasonably interpreted, causes an agent to believe that the principal desires him [or her] to act in a particular manner on the principal's account." *Turner*, 771 F.2d at 345 (8th Cir. 1985)(quoting *Sys. Inv. Corp. v. Montview Acceptance Corp.*, 355 F.2d 463, 466 (10th Cir. 1966)). Although the district court's order does not make a specific finding of express authority, the order states that the district court "credit[s] Mr. Blackman's account of the settlement communication between him and Ms. Harris." We defer to the district court's credibility determinations. *Mueller*, 143 F.3d at 416. According to Blackman's account of the settlement communication, Blackman stated to Harris that the proposed settlement

would resolve her entire discrimination suit, and she then expressly agreed to settle the case. Transcript of Motions Hearing at 16-17. Harris's spoken words during this conversation, reasonably interpreted, caused Blackman to believe that Harris desired him to enter into the proposed settlement agreement on her account. Therefore, we hold that Blackman had express authority to enter into the settlement agreement on behalf of his client.

The district court acknowledged in the order that "[o]ne can understand how a lay person might misunderstand what a lawyer says and writes about a settlement in a case like this." However, even if Harris misunderstood what she was agreeing to, this would not defeat the grant of express authority to enter into the settlement agreement. With regard to Harris's complaint that the settlement agreement was not explained to her with sufficient care, "arguments addressing the adequacy of [an attorney's] legal representation, regardless of their merit, are irrelevant" to the determination of whether a party gave her attorney express authority to enter into a settlement agreement. *Mueller*, 143 F.3d at 416.

Id. at *2 (footnote omitted).

As in Harris, the parties here and their former counsel disagree about the terms of the settlement agreement, and, as in Harris, the terms were not memorialized in writing. Langdon testified that he had the express authority to settle the claims of all three Elliotts with both Ford and Dave Sinclair and that they did in fact reach an agreement to settle. Although Gregg Elliott admits that he authorized Langdon to settle his wife Deborah's claims against Ford, he denies authorizing the settlement of his son Jeffery's claims or his own claims against Ford. He also denies authorizing the settlement of any claims against Dave Sinclair. The

Elliotts also assert that a mutual mistake of material fact was made such that the settlement was never formed, or if a settlement was formed, it should be set aside.

In Missouri the act of settling is "presumed prima facie to be authorized," and therefore the burden to prove that Langdon lacked the authority to settle the case falls on the Elliotts. <u>Southwestern Bell Tel. Co. v. Roussin</u>, 534 S.W.2d 273, 276 (Mo. Ct. App. 1976). I find Langdon's recollection of the events to be credible. He explained his negotiations with Ford and that he had settled claims with Ford in the past. He testified that Ford never agreed to piecemeal settlements, and that all three plaintiffs' claims were settled. He also explained that he had requested Ford withhold the documents and money until he finished negotiating discounts on the medical liens, because health care providers are reluctant to reduce their liens once a plaintiff has actually received settlement money. This testimony is entirely reasonable and is internally consistent. The Elliotts' testimony and arguments, on the other hand, raise more questions than they answer. They appear to admit having settled at least some of Deborah's claims, but do not explain why she is bringing them again in this suit if she previously settled them. They failed to produce the discovery I ordered them to produce, redacted what appears to be the only relevant document they did produce, and made repeated efforts to avoid participating in discovery. They have made no effort to explain anything that might have happened

between the May 2005 dismissal of their St. Louis County suit and the July 2005 filing of this suit. Given Langdon's unequivocal testimony and plaintiffs' attempts at obfuscation, I credit Langdon's reasonable and internally consistent testimony.

Langdon had express authority to accept the settlement offer from Ford and Dave Sinclair on behalf of the Elliotts. And as indicated by the Eighth Circuit, no misunderstanding of agreement terms would defeat a grant of express authority. Langdon's acceptance binds the Elliotts to the terms of that agreement, including their obligation to release Ford and Dave Sinclair of all liability regarding the July 2001 rollover accident. This release precludes their claims against Ford and Dave Sinclair Ford in this suit.[1] I conclude that joinder of Dave Sinclair Ford was fraudulent.

### B.    Fraudulent Joinder of Latham Tire

Bridgestone/Firestone contends that I may disregard the citizenship of Latham Tire as well, in determining whether removal was proper, because the Elliotts can establish no cause of action against Latham under Missouri law.[2] A defendant is

---

[1]Ford's motion to dismiss asks, in the alternative, that I enforce the settlement agreement. I have no jurisdiction to do so in this case.

[2] Fraudulent joinder is essentially a state-law issue. <u>See, e.g.</u>, <u>Reeb</u>, 902 F.Supp. 185, 186 (E.D. Mo. 1995) (fraudulent joinder raises issue of whether the plaintiff has stated a cause of action, <u>under Missouri law</u>, against the defendant).

fraudulently joined "when the plaintiff has not or cannot state a claim for relief against that individual or entity under the applicable substantive law or does not intend to secure judgment against a particular defendant." 14B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, <u>Federal Practice and Procedure</u> § 3723, at 631-36 (3d ed. 1998).

The Elliotts' petition alleges five counts against Latham Tire. These counts include breach of contract, negligence, negligent misrepresentation, fraud, and loss of consortium. Gregg Elliott's deposition testimony in the earlier suit directly contradicts factual allegations made in the Elliotts' petition in this case. I find that there is no factual or legal basis for the Elliotts' claims against Latham, and that they also were fraudulently joined to defeat diversity jurisdiction.

### 1. Breach of Contract

According to Missouri law, the creation of a contract requires a definite offer and an unequivocal acceptance. <u>Hyken v. Travelers Ins. Co.</u>, 678 S.W.2d 454, 458 (Mo. Ct. App. 1984). Negotiations or preliminary steps towards a contract do not constitute a contract. <u>Cervantes v. Ryan</u>, 799 S.W.2d 111, 116 (Mo. Ct. App. 1990). The existence of a contract necessitates a "meeting of the minds" which the court determines by looking to the intention of the parties as expressed or manifested in their words or acts. <u>Brand v. Boatmen's Bank of Cape Girardeau</u>, 824

S.W.2d 89, 91 (Mo. Ct. App. 1992). Consideration sufficient to support a contract may be either a detriment to the promisee or a benefit to the promisor. Heath v. Spitzmiller, 663 S.W.2d 351, 356 (Mo. Ct. App. 1983).

I find that no valid and enforceable contract was ever made between the Elliotts and Latham Tire. The deposition testimony of Gregg Elliott, who was in charge of the maintenance of the Ford Explorer vehicle for his family, establishes that Gregg went to Latham Tire and asked about replacement tires for his vehicle. The employees of Latham made it clear that the replacement tires were not currently available but that Gregg was free to add his name to the waiting list. There was no offer and no acceptance. Neither party suffered any detriment, nor did either forbear from any activity as a result of this interaction. Gregg could have gone elsewhere to purchase tires, in fact he mentions being added to a waiting list at Sunset Ford for tires as well. Latham Tire was by no means promising certain tires to Elliott that they had to forbear from selling to someone else. There was no meeting of the minds, no definite offer and acceptance, and no benefit experienced by either party. Gregg Elliott's visit to Latham Tire to inquire about the availability of replacement tires would constitute mere negotiations or preliminary steps towards the formation of a contract. However under Missouri law, since no agreement was ever reached, no contract was formed. Therefore the Elliotts can not establish a

cause of action for breach of contract against Latham.

## 2.    Negligence

In order to establish a claim for negligence under Missouri law, the Elliotts must establish, among other factors, that Latham Tire had a duty to the Elliotts. Krause v. U.S. Truck Co., Inc., 787 S.W.2d 708, 710 (Mo. 1990). "The common denominator that must be present is the existence of a relationship between the plaintiff and defendant that the law recognizes as the basis of a duty of care." Bunker v. Ass'n of Mo. Elec. Coops., 839 S.W.2d 608, 611 (Mo. Ct. App. 1992) (citation omitted). No relationship and no duty exists between the parties here.

The pleaded basis for the plaintiff's claim of negligence is that Latham Tire owed the Elliotts a duty to exercise ordinary care in maintaining a supply of replacement tires. No statutory authority nor case law authority has been cited by the parties, nor has the Court found such authority, that a business has a duty to maintain a supply of inventory for people with whom they have no contractual or prior relationship. This leads the Court to the conclusion that Missouri does not recognize a duty of a business to maintain a supply of inventory of a product for which they have no certain customer.

In response, the Elliotts argue that Missouri law imposes liability on a party when it negligently performs a gratuitous act, even when there was no duty to act

originally.  <u>Strickland v. Taco Bell Corp.</u>, 849 S.W.2d 127, 132 (Mo. Ct. App. 1993); Restatement (Second) of Torts: Negligent Performance of Undertaking to Render Services § 323.  Although this is indeed a principle of Missouri law, it does not apply here.  Latham Tire never gratuitously acted to help the Elliotts replace their tires.  When Gregg Elliott visited the store, Latham's employees answered his questions and put his name on a waiting list.  Gregg admits in his deposition that they gave him no advice and performed no service on his vehicle.  Latham Tire did not undertake any action for the Elliotts and thereby could not have performed negligently to create a duty between the parties.  I find no basis in law or fact for a claim of negligence by the Elliotts against Latham Tire.

### 3.    Negligent Misrepresentation

In Missouri, "[a] negligent misrepresentation claim is premised upon the theory that the speaker believed that the information supplied was correct, but was negligent in so believing."  <u>Colgan v. Washington Realty Co.</u>,  879 S.W.2d 686, 689 (Mo. Ct. App. 1994).  The Elliotts have pleaded insufficient facts to meet the Missouri requirements for a negligent misrepresentation claim.[3]  The deposition

---

[3] To maintain a cause of action for negligent misrepresentation in Missouri, one must show: "(1) speaker supplied information in the course of his business or because of some other pecuniary interest; (2) due to speaker's failure to exercise reasonable care or competence in obtaining or communicating this information, the information was false; (3) speaker intentionally provided the information for the guidance of a limited group of persons in a particular business

testimony of Gregg Elliott demonstrates that there is no factual basis for a negligent misrepresentation claim against Latham Tire. The Elliotts have pointed to no statement made by Latham Tire, or made on its behalf, that was false. Latham put the Elliotts on its waiting list for new tires and told Gregg that it was a Michelin LTX model tire that they were supplying as replacements. No information was supplied by Latham to the Elliotts that was negligently believed to be true by Latham. There is also no indication that the Elliotts relied on any false statements by Latham Tire to their detriment. Gregg Elliott unequivocally denied receiving any advice from Latham Tire when he went there seeking replacement tires. No cause of action for negligent misrepresentation can be maintained by the Elliotts against Latham Tire.

### 4. Fraud

The Elliotts also allege a count of fraud against Latham Tire based on their concealment of the material fact "that suitable tires were not available and would not be provided," and that statements that Latham made "affirmatively misrepresented the truth." Among other elements, a claim of fraud in Missouri requires a representation that is false. Midwest Printing, Inc. v. AM Int'l, Inc., 108

transaction; (4) listener justifiably relied on the information; and (5) that as a result of listener's reliance on the statement, he/she suffered a pecuniary loss." Miller v. Big River Concrete, LLC, 14 S.W.3d 129, 133 (Mo. Ct. App. 2000) (citation omitted).

F.3d 168, 170 (8th Cir. 1997).  The deposition of Gregg Elliott directly contradicts any claim of a false statement.  Instead, his sworn testimony revealed that Latham told him that there was a waiting list and actually showed him the written list.  This action undeniably establishes that there was no false representation by Latham to the Elliotts that replacement tires were available.  The Elliotts have no basis in law or fact for a cause of action of fraud against Latham.

### 5.    Loss of Consortium

A loss of consortium claim is a derivative claim in Missouri.  A spouse cannot recover for loss of consortium if the other spouse has no valid claim for personal injuries.  H.R.B. v. J.L.G., 913 S.W.2d 92, 99 (Mo. Ct. App. 1995).  Since there is no basis in law or fact for any cause of action by Deborah Elliott against Latham Tire, Gregg Elliott's derivative claim for loss of consortium cannot survive.

The Elliotts have brought these allegations against Latham Tire as an agent of Ford or alternatively, as a separate and independent actor.  Based on the above discussion, the Elliotts have no actionable claims against Latham Tire under Missouri law.  Therefore it does not matter whether these allegations are brought under an agency liability theory or an individual liability theory.  Because deposition testimony establishes that no factual basis exists to find that Latham Tire has committed an actionable wrong against the Elliotts, there is no basis in fact or law

for any of the alleged causes of action against Latham.

## IV.     Conclusion

Based on the pleadings from the parties, the submitted depositions of Robert Langdon and Gregg Elliott, and the affidavits from the Elliotts, the Court concludes that the Elliotts have not and cannot state a claim for relief against Ford Motor Company, Dave Sinclair Ford, and Latham Tire under the applicable substantive law of Missouri.  As a result, I find that the two non-diverse defendants were fraudulently joined to defeat diversity jurisdiction.  I will also grant the motions to dismiss.  The remaining defendant, Bridgestone/Firestone, is incorporated in the State of Nevada and has its principal place of business in the State of Tennessee. The requirements of 28 U.S.C. § 1332 are met since there is diversity of citizenship between the parties and the claims satisfy the amount in controversy.

In addition, after considering all the pleadings and facts, I will deny the motion for sanctions filed by Bridgestone/Firestone against the Elliotts.  Although I agree that they failed to comply with my court orders, and sanctions could be issued, I do not believe that sanctions are necessary to achieve justice in this case.

Accordingly,

**IT IS HEREBY ORDERED** that the plaintiffs' motion to remand [# 20] is denied.

**IT IS FURTHER ORDERED** that defendant 230971 Latham Tire Company's motion to dismiss [#13] is granted.

**IT IS FURTHER ORDERED** that defendants Ford Motor Company and Dave Sinclair Ford's motion to dismiss [#15] is granted.

**IT IS FURTHER ORDERED** that defendant Bridgestone/Firestone's motion for sanctions [#39] is denied.

**IT IS FURTHER ORDERED** that plaintiffs' motion to supplement [#44] is granted.

I will set this case for a Rule 16 scheduling conference by a separate order.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 7th day of March, 2006.